JohN Mabshall of Eranklin, Special J.,
delivered the opinion of the court:
The matters submitted to the judgment of the court, in this case, arise out of the last will of Isaac Eranklin •deceased, and' various ácts of his executors, devisees and heirs and distributees, after his death and before the exhibition of the bill of the complainants, as well as adjudications of courts in the States of Tennessee and Louisiana.
*328 Isaac Franklin made and published his last will and testament in the parish of West Feliciana, in the State of Louisiana, on the 24th of May, 1841, and died on the 27th of April, 1846. His domicil at his death, as well as at the making of his will, was in Sumner county, in the State of Tennessee. At his death, he left surviving him his widow, the defendant, Mrs. Acklen, and three daughters, the defendant, Emma Franklin, and Adelicia Franklin, who died 8th June, 1846, and Victoria Franklin, who died 11th June, 1846, who were his only heirs and next of kin. Soon after the death of the testator, his will was proven and recorded in the county court of Sumner county, Tennessee, and in the probate court of- West Feliciana, Louisiana; and the defendants, Oliver B. Hays and John Armfield, two' of the executors nominated in the will, obtained letters testamentary, thereon from both courts.
William Franklin, the other executor in the will, has never qualified or acted as executor.
The testator at his death left estates in the States of Tennessee and Louisiana, Mississippi, and Texas. His-property in Tennessee consisted principally of the Fair-view plantation in Sumner county, and the slaves and other personal property thereon.
In Louisiana, he had several plantations, stocked with slaves and other property, employed in agriculture. His estate in Texas consisted exclusively of lands, and in Mississippi principally of ohoses in action.
The testator by his will, among other things, devised and bequeathed as follows:
First. All my just debts are to be punctually and speedily paid, and the legacies, usufructs and bequests *329 hereinafter mentioned, are to be discharged and paid by my executors at the time and in the manner directed, and as soon as circumstances will admit.
II Item. To my dearly beloved wife, Adelicia Hays, daughter of Oliver B. and Sarah C. Hays, of Davidson county, State of Tennessee, I give and bequeath all the property of whatever kind or nature, together with the increase of the same, which has been or may hereafter be given to or inherited by her from her said father, Oliver B. Hays, to her and heirs forever. I also give and bequeath to my said wife my household and kitchen furniture, of every sort and kind, on my estate in Sumner county, State of Tennessee, known as my Eairview plantation, with the stock of liquors, groceries and provisions which may be on hand on that estate or plantation at the time of my decease, to be used and disposed of as she may think proper.
And I further give, devise and bequeath to my said wife out of the revenues of my plantations in Louisiana and Tennessee, and the dividends of my bank stocks and other interests coming to me, such sum or sums of money annually, as may be found necessary to support her and my child or children by my marriage with my said wife, in the best style, and also to educate my said child or children in such manner as she may deem proper, during and for the full term of the time that she shall remain my widow. It is my wish and desire that during the widowhood of my said wife, that she and my said child or children shall remain and reside upon my Eairview plantation in the county of Sumner, and State of Tennessee aforesaid. And for that purpose I hereby give her and them the use and profit *330 and full benefit of that estate, including tbe dwelling house, out houses, buildings, fixtures, gardens, lands and improvements, slaves, cattle, horses, mules and other stock, personal property, &c., &c. And in case my said wife should marry again, before my present child, Victoria, or any other children that I may hereafter have by my marriage aforesaid, should arrive at the full age of majority, or lawfully marry, then it is my desire that my executors take possession of my said estate or plantation in Sumner county, Tennessee, together with the slaves, cattle, horses, mules and other stock, personal property, &c., &c., and hereby constitute my said executors, guardians of my said child or children; and direct them to make provision for the education and support of my said children, until they become of age or marry.
And in lieu of the use of said estate and said annual revenues, in the case of the second marriage of my said wife, either before my said child or children shall become of age or marry, or after my said children shall become of age or marry, I give to my executors in trust, for the seperate use and maintenance of my wife and any children she may have by a second marriage, the sum of one hundred thousand dollars, to be paid as follows, to wit: the sum of twenty thousand dollars within the year of the second marriage, and the residue in ten equal annual instalments thereafter; or at her election, the sum of six thousand dollars annually, during her life, in lieu of the payment of said one hundred thousand dollars. And said sum of six thousand dollars annually to my said wife during her said life, or the payment of said one hundred thousand dollars, shall be *331 in fall for all her rights of dower or any other rights, that she may have in my estate.
Ill Item. To my daughter Victoria, the only child born of my marriage with- my said wife np to the present time, and all such other of my children as may hereafter be born of said marriage, and the heirs of their bodies, I give and bequeath the following portion of my estate, to wit: in case there should be no other child born of said marriage except my said daughter Victoria, then I give and bequeath to her and her heirs, the undivided one third part of all my estate, real and personal, movable and immovable, rights, and credits, situated, lying and being within the State of Louisiana; in case of another child born of said marriage, then I give and bequeath to my said daughter Victoria and the other child of said marriage and their heirs, the undivided one half of all of said property and estate in Louisiana, to ’ be divided by them when they become of age or marry, share and share alike in equal portions, and in case of two or more children born of said marriage, beside my said daughter Victoria, then I give and bequeath to my said daughter Victoria, and my said other children to be born of said marriage and their heirs, the undivided two thirds part of all my said property and estate in Louisiana, to be divided by them, when the youngest of my said children shall become of age or marry, share and share alike in equal portions.
And it is my desire and wish that my said children shall aid and assist my executors and trustees in carrying into full effect the intentions manifested by me in this will, and particularly the establishment of the sem *332 inary on my estate in Tennessee, and the faithful payment and discharge of the sum devised to their mother, or the annual usufruct in lieu thereof.
IV Item. It is my wish and desire, after my death, aud I so order and direct, that the whole of my estate, wherever situated, be placed in the hands of my executors, hereinafter named, and for that purpose grant them and the survivors of them, the seisin of aR the property of my estate, and authorize them or the survivors of them to take possession of the whole of my said estate after my death, to be held and possessed by them for the following purposes, to wit:
First. Eor the payment as speedily as possible of all my just debts.
Second. The placing my said wife in possession of all the property and its increase, which had been given to or inherited by her from her father, Oliver B. Hays, together with my household and kitchen furniture on my Eairview estate, in Tennessee, with the liquors, groceries and provisions on that estate, which may be on hand at the time of my decease.
Third. To pay such annual sums of money to my wife, during her widowhood, out of the revenues of my plantation in Louisiana, the dividends of bank stock, and interest on debts due, &c., as she may deem necessary for the support of herself and my children, and their education in the best style of the country where ehe resides, leaving to her the exclusive direction of the education of my children, and the expenditure of such annual allowance during said widowhood as she may think proper.
Fourth. The placing of my wife and children in full *333 possession of all tie property of my said plantation and estate, called Fairview, in Sumner county, State of Tennessee, as a residence for 'and during the time she shall remain my widow, with the use and benefit for said time of the dwelling house, out houses, buildings, fixtures, lands, gardens and. improvements, and slaves belonging to said plantation, with the cattle, horses, mules, sheep and other stock, carriages, personal property, &c., &c. ■
Fifth. And in case of the second marriage of my said wife (in lieu of the sum of money she may consider necessary for the support of herself and his (my) children, and their education, annually during her-widowhood, and the use of the property of the estate in Sumner county, State of Tennessee) to give her the sum of one hundred thousand dollars, in trust for the separate use and maintenance of her and any children she may have by such second or any subsequent marriage, to be paid, twenty thousand dollars in cash’ within the year of marriage, and the residue in ten equal annual in-stalments thereafter, or at her election the sum of six thousand dollars annually, during her life, the payment of either..to be in foil for her rights of dower, or any other - rights that she may have on my estate.
Sixth. In case of the second or subsequent marriages, of my said wife, to receive again into their possession all the property of my said estate, in Fairview, in Sumner county, State of Tennessee, and the same to keep and possess, and the revenues thereof, for the purposes hereinafter named and particularly specified, which they are strictly to carry out, and as guardians, in that ease of my children, to educate them and support *334 them until tlie youngest of them Recomes of age or marries, which education and support I wish to -he in a suitable and proper manner, and at such places as may be thought most advisable, at all times consulting and advising with their mother.
Seventh. For the purpose of increasing and improving my lands and plantations and estates, and particularly the lands and plantations in the State of Louisiana; to cultivate on the three plantations already opened in Louisiana, corn and cotton, and such other crops, as may be found profitable, adding to the Loehlomond plantation twenty additional hands; to the Killarney plantation twenty additional hands; and to open three new plantations on said lands in Louisiana, two of sixty hands and the other thirty hands; which are also to be cultivated in com and cotton,, and such other crops as may be found profitable, until my aforesaid children shall all of them arrive at the full age of majority or marry, when my said executors shall deliver up said plantations, lands, slaves, movable property and their increase, together with such other slaves, inmovables and movables, with their increase, as may have been added to said lands and plantations in Louisiana, to my said children or their heirs, and the trustees hereafter named, for the purpose of division between my said children and my said trustees, and to carry out the intentions of this my will, the particulars of said improvements, purchases of hands or slaves, and the trusts hereafter to be particularly mentioned.
Eighth. The placing of the slaves Brutus, Fanny his wife, Marcus, Georgiana and any other house servants, not belonging to the Louisiana plantation, on the *335 Fan-view plantations, Sumner county, State of Tennessee, as part of the domestic establishment for that place.
Ninth. The payment of the legacies hereinafter mentioned, and
Tenth. The building of a tomb and family vault, 'hereinafter mentioned, on my said plantation in Sumner county, Tennessee.
Eleventh. And the placing of my trustees, hereinafter mentioned, in full possession, at the times designated, of all my property situated in the States of Tennessee and Mississippi, or any other common law States, where trust estates can be created, and one-third, one-half or two-thirds of all of my movable and immvea-ble property, effects and credits, as the case may be, by the birth of children, of my estate in Louisiana, together with all my bank stock and effects and credits, to be laid out in the establishment of a seminary or academy, on my said plantation in Sumner county, State of Tennessee, as will be particularly designated and mentioned in this will. And my executors are particularly directed to lay out the balance of the revenues of my Louisiana plantations, my Tennessee plantations, the dividends of my bank stock and interest on debts due me, over and above the annual expenditures which they have been heretofore directed to make in this will, from time to time, in the purchase of good, effective, young and healthy slaves, to be placed on my said lands and plantations, as they may be wanted. And in particular, to place twenty additional hands on my Lochlomond plantation, situated in the parish of West Feliciana and State of Louisiana, with such additional horses, mules, teams, plows, gearing, farming *336 utensils, &c., as may be found necessary to a successful and proper cultivation of that plantation. Also to place twenty additional hands on my Killarney plantation, adjoining said Lochlomond plantation, in said parish of-- West Feliciana, with such additional horses, mules, teams, plows, gearing, farming utensils, &c., &c., as may be found necessary to a successful and proper cultivation of that plantation. And also to build on •my lands in said parish, as soon as the same can conveniently be done, with my own hands, three additional negro quarters, or sets or clusters of houses, in the same style and plan as those on my other plantations, called Belleview, Killarney and Lochlomond; the aforesaid quarters to. be built at the following places, to wit: one near the wood-yard, fronting on the Mississippi river, sufficient for sixty hands, to be called the Angora plantation; another at or near Foreman’s old fields, fronting also on the Mississippi river, sufficient for sixty hands, to be called the Loango plantation; and the other above Bow’s bayou, fronting on the Mississippi river, sufficient for thirty hands, to be called the Pa-nola plantation. And my executors are further directed to erect on each of said new plantations, suitable gin houses, mill houses, stables, corn houses, overseer’s houses, out houses, and other fixtures and improvements, with gins, millstones, gearing, &c., &c., in a good and substantial manner, with such approved gins, &c., as may be considered the best; the buildings, &c., to be as near as can be like those on my other plantations, Belleview, Killarney, Lochlomond; and they of course will furnish such horses, mules,' oxen, teams, farming utensils, gearing, &c., &c., as may be wanted *337 on each, of said new plantations. And for the purpose of carrying my intentions into full effect, I hereby authorize my said executors to purchase the aforesaid additional hands or slaves for my estate, from time to time, as well as horses, mules, oxen, personal property, &c., for the use of said plantations; and if it should become necessary, by any decision of the courts of law, to have any of my said lands, plantations, slaves, moveables or immoveables, or from- any other cause, sold again, to pay judgment creditors and privileged claims, or for any other purpose, I hereby expressly authorize my said executors, or the survivors of them, to purchase any such property for my estate, to secure the titles or other interest, if it should be deemed advisable for my interest. I also authorize my said executors to dispose of and sell any refractory slaves, or those of little use or value, (except from old age,) on either of my plantations in Louisiana or Tennessee, and also, to dispose of and sell any surplus horses, cattle, sheep, hogs, or other stock, on either of those plantations, if they should deem the same advisable. And as my said executors, neither of them reside in the State of Louisiana, and it will be very inconvenient for them or either *of them, to give their personal attention to my planting interest in that State, I hereby authorize them to employ a general agent, to superintend the several plantations in Louisiana, with a reasonable and competent salary; and in the absence of the executors, that he be charged with the purchasing and furnishing supplies for those plantations, the shipping and direction of the sales of the crops, with authority to employ and discharge overseers, and mechanics and *338 workmen, as it may be found necessary, giving, however, to the executors, full power and .control over said agent.
VII Item. After the aforesaid improvements are made on my said plantations in the parish of West Feliciana and State of Louisiana, it is my desire that my said executors, or my said childen, (if they should have become of age, or marry, and placed in possession of their shares of my said property in Louisiana,) should pay, or cause to be paid, out of all of the revenues of those plantations, the portions of my said children, and my trustees hereinafter mentioned, each their resjíective pro rata proportions of the following legacies, to wit: 1. To Isaac Franklin Purvis, the son of my sister Margaret Franklin and her husband Allen Purvis, deceased, late of Sumner county, State of Tennessee, the sum of five thousand dollars. 2. To Isaac Franklin Wood, the son of my sister Jane Franklin, the wife of John Wood, of the State of Missouri, the sum of five thousand dollars. 3. To Isaac Franklin Cantrell, the son of my niece, Mary Franklin, the late wife of Zeb-ulon Cantrell, of Sumner county aforesaid, two thousand dollars. 4. To Isaac Franklin Greene, the son of James Greene, of Sumner county aforesaid, .one thousand dollars. And 5. To my brothers James and William Franklin, of Sumner county aforesaid, each the sum of five thousand dollars.
VIII Item. I give. and bequeath all my property, real and personal, of whatever kind or nature, that is situated in the States of Tennessee and Mississippi, or any other common law State, where trust estates can be created, together with my bank stocks and effects and *339 credits, and in case I should have no other children by my said marriage, except my said daughter Yictoria, then two-thirds of all my property, movable and immovable, that is situated in the State of Louisiana; hut if there should he two children born of said marriage, then only an undivided one-half of all of my said property, movable and immovable, slaves, &c., that is situated in the said State of Louisiana; and if there-should be three or more children born of said marriage, then I only give an undivided one-third part of all my said property, movable and immovable, slaves, &c., that is situated, lying and being in said State of Louisiana, and also the rest and residue of' my estate, wherever situated, in trust, to my two brothers, James and William Franklin, of Sumner county aforesaid,- for the following purposes, to wit: The revenues arising from said property, bank stock, and such money funds or credits due me, as may remain after the payment of the several devises and legacies, annuities, increase and amelio-rations of my said plantations in Louisiana, and other purposes, as directed by this will, together with the revenues arising from my plantations in Tennessee, and other property in Tennessee and Mississippi, and other common law States, together with the dividends of my bank stock and interest on money and debts due me, and the revenues • of the one-third, one-half or two-thirds of all my property situated in the State of Louisiana, as the case may be, by the birth of children of my said marriage, after the payment of said several devises and legacies, annuities and expenditures, increase and ameliorations, of said. plantations in Louisiana, &c., to le laid out in building proper and suitable edifices on *340 my said Fairview plantation in the county of Sumner and State of Tennessee, for an academy or seminary, the furnishing the same with fixtures and furniture, and the employment and payment of such teachers and professors, male and female, as may he considered- necessary by my said trustees, for the education, board and clothing’ of the children of my brothers and sisters, and their descendants, as well as my own children and their descendants, in the best and most suitable and proper manner for American youths-, having a particular regard to a substantial and good English education, and such other higher and ornamental branches as the aforesaid revenues, &c., will enable my said trustees to accomplish; and if the revenues, &c., should be sufficient therefor, I also wish that the poor children in said county of Sumner, of unexceptionable character, and such as my said trustees may select, should likewise be educated and supported, during the time, at the same seminary.
And after the death of my aforesaid brothers, it is my will and desire, that the aforesaid trust be continued and pass over forever, in the heirs of my said brothers, to pass the estate, and that the magistrates of the county court of said county of Sumner and State of Tennessee, and their successors in office, be thereafter the perpetual superintendents of the aforesaid seminary, to see that my intentions be folly carried into effect.”
The widow, from the death of the testator, occupied and enjoyed the Fairview plantation and property under the will, to the 27th January, 1848, when she sold her interest in this property, under the 2d item of the will,, *341 to the complainant, William EranMin, surviving trustee under the 8th item of the mil, at the priee of thirty thousand dollars : which sum the executors paid to her at the instance of the trustee. The trustee has had possession of this property ever since the purchase, and has enjoyed the profits thereof. ■ The widow married the defendant, Joseph A. S. Acklen, on the 8th May, 1849, -and on the 9th day of January, 1850, elected to take, under the 2d item of the will, the sum of one hundred thousand dollars, instead of the annuity of six thousand dollars during her natural life. This sum of -one hundred thousand dollars has been paid in part only, by the executors, to Mrs. Acklen.
In a suit between the complainants and the widow, ■and the heir of the testator, in the supreme court of the State of Louisiana, in which the validity of the devise to the complainants as trustees, under the 8th item ,of the will was in question, it was decided by that ■court, that so much of the will, as undertook to devise real estate or immovables, as designated by the law of Louisiana, was void and inoperative, and they coustrued the will as if said disposition had not been made or written in it.
The exeeutors had the possession of the Louisiana estates and revenues from the death of the testator to the 21st of March, 1851, when they, in the execution ■of an order made by the district Court of the 7th judicial district in the State of Louisiana, in a litigation then pending in that court, delivered to the defendant, Mrs. Acklen, in her own right, and to - her as tutrix, and her husband as co-tutor of the defendant, Emma, the entire property of the testator in the State of Lou *342 isiana, whether the same consisted of movables or im-movables. The court declaring that Mrs. .Aciden was entitled, as heir to her two deceased daughters to nineteen ninety-sixths, and Emma, in her own. right and as heir to her two deceased sisters, to seventy-seven ninety-sixths thereof.
The executors have passed their Louisiana accounts, and the same have been allowed by the tribunals there, and their administration in that State has closed in the manner indicated.
The executors, upon a final settlement with the county court of Sumner, of their Tennessee administration, &c., were found to be in advance on the 10th day of August, 1853, as follows: the defendant, O. B. Hays, in the sum of two thousand and five .dollars and thirteen cents, and the defendant, John Armfield, in the sum of thirty-nine thousand and fifty-nine dollars and forty cents. These balances are admitted by complainants to be correct, and are the results of advances made by the executors to the complainants as trustees under the 8th item of the will, under the belief that .the will was valid, and with the intention of both parties, to put the seminary contemplated by the will into operation, in advance of the time provided in the will. This appears to have been- the understanding of Mrs. Aciden, when she sold her interest in the Eairview ■property; and all parties then contemplated that that .property should not return to the executors on the marriage of the widow, but should remain with the trustees, as it had done.
The first and most prominent question to be determined is, as to the validity of the devises and bequests *343 made in the 8th. item of the will, under the constitution and laws of the State of Tennessee.
The arguments presented on both sides have been marked by ability and learning, .and it must be admitted, that there is a conflict between some of the decisions of the courts referred to in the briefs. Such a conflict, however, is to be expected, upon a question involving State policy to some extent, rather than a mere right exclusively, especially where the decisions in England are referred to, as well as the decisions of the different States of this Union.
When wills are brought before the courts to be executed, the general rule is, “that the intention of the testator, to be collected from the whole will, is to govern, provided it be not unlawful or inconsistent with the rules of law,” 4 Kent’s Com., 534-5.
This rule is based upon all the reasons favoring the power to make wills, and results from the intrinsic nature of that mode of disposition.
The intention of Isaac Eranklin, to be .collected from his whole will, in reference to the devises and bequests in hand, admits of neither doubt or cavil. Although he lived near five years after he made his will, he made no alterations in it. He evidently, before he made his will, had reflected much, both as to the bounty, and as to the machinery he would put in play to give it effect. He felt that he was able, without intrenching upon the just- claims of his family, to bestow a bounty sufficient to do much good, and it may be to perpetuate his name, and he made a princely donation, and not content with the donation and the designation of the beneficiaries, he presents, in the foil- *344 est relief, a scheme or plan, by which Ms intentions are to be carried into practical effect. We Rave not only the donation, beneficiaries and plan given in the clearest forms of expression, but have in the will, an injunction, by the testator, upon his children, bom and unborn, to aid and assist in carrying into full effect, his intentions in relation thereto.
It is the duty of the court to give full effect to these clearly expressed intentions of the testator, if not unlawful, or inconsistent with the rules of the law, as to the property of the testator within its jurisdiction.
Several grounds of objection to the validity of the provisions of the will in question have been taken in the argument presented on behalf of the defendants, Mrs. Acklen and Emma Franklin.
It is urged, that the provisions under consideration, can be sustained, if at all, only upon the ground that they are devises to charitable uses. And of this opinion is the court. It is evident that the testator did not intend a simple gift to his own and his brothers’ and sisters’ descendants, or to the poor children of Sumner county. The benefit given, as well as the plan of the testator demonstrate this, and show that the design of the testator was to create a charity.
It is urged, that if testamentary gifts to charitable uses, can be supported by the laws of this State, the attempted gift by the testator was invalid on some or all of the following grounds : That the gift was made to his seminary, which had no real existence, was a phantom of his -brain, and therefore incapable of taking; that if the seminary was not the donee, by thé intention of the testator, the descendants of the testator and *345 of Ms "brothers and sisters were too certain a designation of beneficiaries to authorize the gift to he denominated a charity, while the poor children of Sumner county was too uncertain a designation of beneficiaries, to authorize the court to establish the charity as to them. That if this is a charity at all, it is such a one as could have been established by the chancellor in England, only as a delegate of the crown, and could not have been established by the chancellor in that Mngdom, under his extraordinary jurisdiction, as it existed anterior to the statute of 43 Eliz., ch. 4. So that a court of chancery in Tennessee has no jurisdiction.
If there were no laws on the subject of charities, in the sense we are considering them, doubtless there would be opponents to the passage of a statute authorizing gifts to charitable uses, on the ground of the abuses to which every system of charities is liable; abuses consisting partly in the administration of them, and in Christian countries, resulting from a misapprehension of the will of the' Creator, as to what constitutes meritorious Christian conduct.
But it cannot be disguised, so long as charity, in its popular sense, shall be a duty, temporary, limited and fleeting as it is, that when it assumes the form of permanence and extensive diffusion, it will receive the public favor. Indeed there is no civilized country, perhaps, where the State has not availed itself, in some form, of the aid of the donations of the benevolent, in the exercise of the proper charities of the government, and has through its executive or judiciary, taken charge of their administration. These considerations, however, as well as the condition of the country, on the one *346 hand, and the danger of placing large amounts of property out of general commerce, on the other, are properly matters for legislative deliberation, and not for judicial decision. It is the business of the judiciary to ascertain and declare what is the law of the land in a case submitted, and not 'to make a new law, or repeal an old one.
In adopting in this State many of the laws of England, have we adopted the doctrines of the chancery court of that country, in respect to charities?- and to what extent?
Portions of the doctrines of the chancery court in England, on the subject of charities, have .been adopted in this country, and in this State. The cases are so well considered and so numerous, that no court, regarding precedents, can doubt that gifts to charitable uses may be sustained. Vidal vs. Girard, 2 Howard, 56-127. 15 Howard Rep., 367. 14 Pickering, 240. 7 Vermont Rep., 241. 12 Conn., 113. 7 Paige Ch. Rep., 241. 1 Hawks, 96. 2 Iredell Oh. Rep., 9 and 210. 9 Porter’s Rep., 527. Dickson vs. Montgomery, 1 Swan, 348.
The cases cited, (and many more, cases in this country, might be added to the list) show that the sustaining of gifts to charitable uses by our courts of equity, is placed upon too firm a basis to be changed but by the interposition of the legislature. Upon the jurisdiction of the courts of chancery in this State, the cases of Green vs. Allen, 5 Humph. Oakley vs. Long, 10 Humph., 254, and Dickson vs. Montgomery, 1 Swan, 361, have affirmatively settled, that such jurisdiction exists in the chancery court in this State, in cases where *347 the charity is created in favor of a “person having sufficient capacity to take as devisee or donee, or if it he not to such person, where it is definite in its object, lawful in its creation, and to be executed by trustees.”
This court is not disposed to disturb the decisions just referred to, and deems it unnecessary to trace the steps by which the court, in those cases, arrived at the conclusions to which it came.
As to the devise under consideration being a charity, it is insisted that as the .statute of 43 Eliz. ch. 4, is not in force here, it cannot be looked to, to ascertain what a charity is. This objection is answered in the opinion of Greene, J., in the case of Dickson vs. Montgomery. But this court by no means desires to be understood as intending to say, that donations to promote education in this country, are charities, because the statute of Elizabeth, referred to, enumerates as general charitable uses, gifts for the maintenance of schools of learning, free schools and scholars of universities, and for the education and preferment of orphans. Charity is defined to be a general public use. Ambler, 651. Ro use or purpose is more general, public or important in a republic, than education; and no subject, in these States, has been looked upon with more favor by the legislatures and courts.
It is the opinion of this court, that the maintenance of universities, colleges, academies and common schools, and other lawful educational institutions, is a charitable use, without reference to the wealth or poverty of those who may take benefit therefrom; and that gifts for such maintenance will be sustained, if good in *348 other respects. Shelford on Mortmain, 68. A devise to Jesus college, Oxford, and to their successors to find a fellow there, which should be of the testator’s blood and alliance, was held to be a charitable use. Shel-ford, JO.
The institution of a school for the education of the sons of gentlemen, is not, in popular language, a charity, but in the view of the statute, 43 Eliz., ch. 4, all schools for learning are so to be considered. Attorney General vs. Earl of Lonsdale, 1 Sim. Rep., 109.
Upon the point that this was a gift to an ideal being, the academy or seminary which had no existence, it is manifest that the design of the testator was not to make the institution his devisee or donee; the institution was one of the means by which his gift for the advancement of learning, is to be carried into effect.
By the will, the testator appoints his brothers, James Franklin and William Franklin, trustees for the charity, and prescribes their duties. It is scarcely necessary to say, that these persons are capable of taking as de-visees in the language of Judge Turley. The will proceeds in these words: “And after the death of my aforesaid brothers, it is my will and desire, that the aforesaid trusts be continued and pass over forever in the heirs of my said brothers, to pass the estate, and that the magistrates of the county court of said county of Sumner, and State of Tennessee, and their successors in office, be hereafter perpetual superintendents of the aforesaid seminary, to see that my intentions be fully carried into effect.”
The intention of the testator, in the portion of his will just recited, is obvious. Upon the death of his *349 brothers, the charity is not to cease, hut the naked legal title of the property of the charity is to remain in the heirs of the brothers forever, and also upon their death, the body of the justices, and their successors, are substituted into the place of the brothers, with the powers and rights of the brothers, except that they are not clothed with the legal title. It cannot be controverted, that the legal title is well disposed of during the period of the charity, if an unlawful perpetuity is not created, and that the magistrates of Sumner county, as well as the two brothers of the testator, are capable of executing the powers, and performing the duties imposed on them in the will.
Objections are taken, in argument, to the beneficiaries of the charity.
We will first notice those beneficiaries, designated as the poor cJiilclren of Sumner county. It is contended, that this designation of beneficiaries would be indefinite and uncertain, and would not constitute a good charity, but for the appointment of trustees. But the appointment of the trustees, with the powers conferred on them in the will, removes the objection under examination.
The other beneficiaries are brought to our notice by the provision of the will, which directs that the donation is “to be laid out in building proper and suitable edifices, on my said Eairview plantation, in the county of Sumner and State of Tennessee, for an academy or seminary, the furnishing of the same with fixtures and furniture, and the employment and payment of such teachers and professors, male and female, as may be considered necessary by my said trustees, for the education, board and clothing of the children of *350 my brothers and sisters, and their descendants, as well as my own children and their descendants, in the test a/nd most suitable and proper manner, for American youths, haying a particular regard to a substantial and good English education, and such other higher and ornamental branches, as the aforesaid revenues, &c., will enable my said trustees to accomplish.”
Much criticism has been expended on the clause of the will just recited. In the first place, the motives of the testator have been attacked — it is said that the ground-work of his donation was to perpetuate his name, and to build up an aristocracy in his family. A fair reading of the-paper will justify no such conclusions.
The association of the testator’s name with the donation, is not a weak vanity, nor is it inconsistent with modesty, in the manner in which it is done, and no one can suppose that the education of a class of persons, during the time of their pupilage, “in the best and most suitable and proper manner for American youths,” has any tendency to make an aristocracy of the class, or that such an education is not favored by the laws and policy of this State.
The testator’s main object was to provide for a good and substantial English education for his beneficiaries: he supposed however, that there were higher and more ornamental branches of learning, than a good and substantial English education, and made these branches a secondary object of the donation.
These provisions of the will mark the good sense and the sincerity of the testator, and interpose no obstacle to the validity of the gift.
*351 The board and clothing of the beneficiaries during the term of their pupilage in the seminary, is made a matter of objection. It is scarcely necessary to say, that the board and clothing of a pupil at school, is a part of the proper expenses of an education, and as much so as tuition fees, or other expenses, and may well be provided for in a devise of the description under consideration.
It is urged, that the provision made in the clause under consideration, is a simple gift to the children of testator’s brothers and sisters, and, their descendants, as well as his own children and their descendants, and is not a charity, for the reason that there is no uncertainty as to the persons who should take benefit under it.
It certainly has been said, that “uncertainty of individual object is a characteristic of charity,” and it has been said that this “uncertainty is indispensible to all charities,” and “if any one has a right to claim by law, it ceases to be a charity.”.
It is true that uncertainty of individual object is generally characteristic of charity, and that if the beneficiary has a right to claim by law, it ceases to be a charity.
The question on any devise of the- kind is, whether the donation is a simple gift, or a gift to charitable uses ? And to dispose of this question, we have to look to the intention of the testator, his object and plan to effect it, the beneficiaries, the donation and its administration, and the interest or benefit the beneficiaries take. If we gather, that it is a simple gift, or one that the beneficiaries may assert at law, it is not a charity.
*352 In looting to tbe will of Isaac Franklin, it is manifest that his intention was to create a charity for the advancement of education- — -in all time to come. This is shown by the amount of the donation, and the mode of its administration by the trustees, as well as the discretionary powers vested in the trustees, as to the employment of the property and its investments, the employment of teachers, the admission of pupils, and the mode of teaching, &c. No interest in the property, or control over it, or over any part of the machinery of the charity, is given to the beneficiaries, singly or in the mass. The beneficiaries are youths, or persons, when they take benefit under the will, who are in pu-pilage, subject, to some extent, to the powers of the trustees, among which is the right to select the children or descendants, who should be educated, in case they should become too numerous to be all educated; a right which, at once, makes the beneficiaries uncertain within the authorities cited, if such uncertainty is indis-pensible. This uncertainty of individual object is also effected by the facts, that the benefit is unassignable, and can be taken by such of the children and descendants of the description given, as shall be selected by the trustees, in a fair execution of the will, and shall personally attend the seminary, and submit to its legitimate rules. The beneficiaries are subject to perpetual fluctuation, and are, in this sense, uncertain. In a legal sense, this devise is made to education, and the devise is made good by the designation of the class to be educated, and the powers given to the trustees.
It is said that a motive of the testator, personal to the beneficiary, would vitiate a donation to a charita *353 ble use. This must be taken with much allowance. It is certainly untrue as to the motives personal to classes, as shown by the cases of Murdock vs. McDonough, and Vidal vs. Girard.
If a devise, by a testator, for the education of the children, or the orphans, or poor born in his native city, should be good, as a charity, we cannot see why a devise, for the education of the children born of certain designated ancestors, should not b$ good as a charity. Yiewed philosophically, the uncertainty is the same.
In the opinion of the court, the devises and bequests of Isaac Franklin, to his brothers, William and James, as trustees, are good, and should be sustained as a charity, unless avoided by the constitution of Tennessee, prohibiting perpetuities.
Article 1, Section 22, declares that perpetuities and monopolies are contrary to the genius of a free State, and shall not be allowed.
This of course is the paramount law of the land.
But what is the perpetuity that is not to be allowed?
The Constitution neither defines, nor describes ¡Ü4 but assumes that what it is, is known. We'i'jaip d.efl$ then, to enquire into the commonoftaryi fQiiu&xpsropeA understanding of the term. ■-í'já[hd^*hWeJiW6|íai(é<}3tiq|j2:jB7Jítei!-rious definitions, deseifi^ti&fig^'taid tepíes^átatóon’^'iodfroa perpeM^'^xá^f ffelfridou^/^iMséljisénc^i'iwJii'c^, ijwáfh ^Te'W^^eálió^tFónáf^ardtlé'ffl&frlatftl ítfri mítóéadotlié) euqr&áq. rá- It i&>-Lfe8S31J tMi plp&íffegsfi í';eliá»M'-'fcpf ^incórpoTafioii^ ^düd^feeX'ánP fí&fpbtui^íjd'Abe’ca'as^Jiitíilasfs c&ri-‘c^r.0' %üt^hisLl#íi1ííd[ f5?év§) ifiJáéi/i'thMbéver^ ‘gfentuof Iáírd>JI'fey^;)th:éPrSthf^-ífíáai&,i^ve¿^iv/gfapt>xan^ntístetófet‘i ofopÍB$- *354 perty would be perpetuities, because the titles pass forever from the grantors, and the yield of the sales is a perpetual fund, if it may be so called, in the hands of the grantors or those claiming under them, to be used or abused. These are not unlawful perpetuities.
Again: It has been said, that |>roperty held by corporations with the right of perpetual succession in mortmain, is a perpetuity, as well as property held by corporations fis trustees for charitable uses. It must be noted, however, that when this is said, it is generally meant, that when property is so held, it is practically inalienable, though not really so, if the corporation or trustees were inclined to sell, or if the proper tribunals were appealed to, to effect the sale.
It is true'1 that the reason of the rule against perpe-tuities and the reason of the policy of the law, in this country, to destroy the entailment of estates and to pre-L vent property from falling into dead or unserviceable hands, is the same, viz: “To prevent property from being withdrawn from commerce and rendered inalienable.” Property may be held by a man himself and his heirs forever, without making the slightest approach to a perpetuity.
A perpetuity is defined (Lewis ou the Laws of Per-petuities, 164) to be — “a future limitation, whether ex-ecutory dr by way of remainder, and of real or personal property, which is not to vest until after the expiration of, 'or will not necessarily vest within the period fixed and prescribed by law for the- creation of future interests, and which is not destructible by the persons for the time entitled to the property, subject to the ■future/ limitation, except with the concurrence of the in *355 dividual interested under that limitation.” This definition is doubtless correct, and shows what is an unlaw-fid perpetuity.
It is manifest that no settlement of property, not-made inalienable by the terms of the limitation is a perpetuity, however likely it may be, that it will never be abused.
It is of the essence of a perpetuity — that the property is incapable, beyond the period prescribed' by law,, of being sold freed from all limitations and trusts — by the use of all the means known to the law for effecting sales.
If the charity created by Isaac Eranldin shall be established, will the property given by him be in this' condition ?
There are no expressions in the will that render the property inalienable. See 8 Term E., 61. And unless-the trust itself implies that the property should be inalienable, it is alienable. It is conceded that an improvident or prejudicial alienation by the trustees, would be a breach of trust, for which the trustees would be held responsible, and in some instances the purchaser would be made trustee in invitum.
The trustees of a charity may sell the property in the proper and bona fide execution of the trust — and the court of chancery may decree the sale. Attorney General vs. Warren, 2 Swanston’s R., 291. Griffin vs. Graham, 1 Hawks’ R., 96. 7 Paige’s R., 82-3. Hill on Trustees, 463, and authorities cited. Shelford on Mortmain, 677, et segr., and authorities cited.
At common law, charitable uses are exempted from the rules against perpetuities. Lewis on Perpetuities, *356 663, et. seqr. Attorney General vs. Hungerford, 2 Clark and Finn. 357, 374. Cited in 2 Kent’s Com., 288, note. Griffin vs. Graham, 1 Hawks’ R., 120. This point again came before the supreme court of North Carolina in 1842, in the case of The State vs. Girard, 2 Iredell’s Eq. R., 210. Judge Gaston delivering the opinion of the court, says: “The objection that the declared trust would establish a perpetuity, and is therefore forbidden by the Constitution of North Carolina, is untenable — the perpetuities thereby contemplated are estates settled for private uses, so as to be inalienable. This is a public charity.”
The devise in that case was to the poor of Beaufort county, upon the condition that the lands should never be sold, but leased not exceeding seven years, &c.
The court is, therefore, of opinion that the devises .and bequests of the testator to Ms brothers, are valid.
Upon the balances due to the executors of Isaac Franklin upon their Tennessee administration, as showxr in the record, there can be but little difficulty. It appears that the entire Louisiana estates have been taken from their hands, and that their accounts, as executors, have been passed and allowed by the courts in that State. It does not appear that there is any balance in their hands derived under the administration in Louisiana. If' the amounts admitted to be due to the executors had arisen from an ordinary execution of the will, after the delivery of the Tennessee assets to the trustee as legatee, it would be but a common exercise of the jurisdiction of a court of chancery to compel the trustee as legatee to refund a sufficiency of the assets to discharge the demand. The record, however, shows, *357 'that the balances due the executors result principally or 'entirely from advances made by the executor to the trustees, in the payment of the purchase money, for the interest of Mrs, Franklin during her widowhood, in the Fail-View property. This would constitute a debt from the trustees to the executors, and the executors have an equity to recover it. This equity is made stronger by the consideration, that at the time these advances were made, the executors relied upon, and had good reason to rely upon the Louisiana revenues for their reimbursement. The deprivation of these sources of reimburse ment, without their consent or negligence, itself furnishes a ground of equity to the executors to recover these demands against the trustees. It is the opinion of the court that the trustees ought, in equity, out of the trust property in their hands, to pay to the executors, the, sums of money due to them respectively.
As to the mode by which Mrs. Aciden shall be paid the balance of the one hundred thousand dollars, owing to her by reason of her election of it, after her marriage with Col. Acklen in lieu of the annuity, under the will of Isaac Franklin, there is some difficulty. The arguments of counsel have been mainly directed to the other points in the cause, and but faint views if any have been presented to the court on this branch of it.
The difficulties suggested would probably disappear upon a clearer view of the laws of Louisiana, by the writer of this opinion. It is certainly a general ,jple, that a will, valid in the country of the testator’s domi-cil, passes his personal estate, wherever located. Story on the Conflict of Laws, 464, 465, 467, 46,8. Louisiana Code, Art. 1589,
*358 It l-js therefore concluded, that so much of Isaac FranHin’s movable property located • in tbe State of Louisiana at Ms death, as was bequeathed to the charitable use, created by the will, passes by the bequest.
It has been decided by the supreme court of Louisiana, that the devises' in the will of immovable property, situate in that State, to the charitable use, are void, and that the will shall be construed as if such devises and bequests had not been written in the will. This decision by no means impairs any of the other gifts or charges made in the will, upon the testator’s immovable property situated in the State of Louisiana, which the testator was competent to make by the laws of that State.
It appears, Louisiana Code, Articles 1480, 1481, 1482, that Isaac Franklin at his death, by his will could only dispose of one-third of his property in Louisiana. His children, as forced heirs, took two-thirds as their legitime.
Any disposal of property whether inter vivos or ccmsa mortis, exceeding the quantum of which the person may legally dispose, to the prejudice of the forced heirs is not null, but only reducible to that quantum. Code, Article 1489.
If the disposition made by donation ocmsa mortis, be of an usufruct or of an annuity, the value of which exceeds the disposable portion, the forced heirs have the option, either to execute the disposition or to abandon to the donee the ownership of such portion of the estate, as the donor had a right to dispose of.
In Louisiana, the heir, as soon as the succession shall be opened, has the right to renounce or accept it. *359 The acceptance may be express or tacit, and tbe effect of tbe acceptance if unconditional, is to bind tbe beir personally to pay tbe debts of tbe succession. Code, Arts. 1006, 1049, 1379.
Tbe same rule applies with some qualifications as to tbe payment of legacies. Code, Art. 1618 et seq., and see Article 1623. If tbe testamentary executor bas not tbe seisin of tbe estate, or bis functions have 'expired, tbe legatees must apply to tbe beirs for tbe payment of tbe legacies.
It appears that tbe beirs of Isaac EranMin baye possession or seisin of tbe entire succession including the disposable portion, as well tbe legitime and movable as immovable property, and that tbe testamentary executors have no seisin of tbe succession, and that tbeir functions have expired. It is concluded that tbe defendants, Mrs. Aciden and Emma Eranklin, are bound for tbe payment of all valid and unpaid charges on tbe Louisiana property under said will.
Tbe court is of opinion that tbe equities of tbe parties to this suit ought to be adjusted, and that this court bas jiu'isdiction to mate such adjustment in this cause.
In order to enable tbe court to adjust these equities intelligently, proper enquiries and accounts will be made and taken, and reported upon, reserving all questions of law arising.
A decree will be entered in conformity with this ■opinion.